Frederick D. PEEL, Plaintiff,

v.

FLORIDA DEPARTMENT OF TRANS-
PORTATION, Tom B. Webb, Jr., as Sec-
retary, Florida Department of Transpor-
tation, Defendants.

No. MCA 76–42.

United States District Court,
N. D. Florida,
Marianna Division.

Mar. 31, 1977.

Donald S. Modesitt, Asst. U. S. Atty., Northern Dist. of Florida, Tallahassee, Fla.,

Stuart E. Schiffer, Guy B. Arthur, Attys., Dept. of Justice, Civ. Div., Washington, D. C., William H. Berger, U. S. Dept. of Labor, Officer of the Sol., Washington, D. C., for plaintiff.

George L. Waas, Atty., State of Florida, Dept. of Transp., Tallahassee, Fla., for defendants.

## MEMORANDUM OF DECISION AND ORDER

STAFFORD, District Judge.

Plaintiff in this action alleges that his rights under the Veterans' Reemployment Rights Act, 38 U.S.C. § 2021 et seq. (hereinafter VRR Act) have been violated by the defendant.

Defendant has filed a motion to dismiss, and both plaintiff and defendant have filed motions for summary judgment. The motions came on for hearing, and oral arguments were presented by counsel for both parties. Following oral argument, the parties submitted a Stipulation of Facts for the record. The court finds that there are no genuine disputes as to the material facts in this case.

### I. *The Facts*

Plaintiff was a permanent full-time employee of the defendant for more than 3½ years. The defendant, Florida Department of Transportation (hereinafter Florida DOT), was and continues to be an agency of the State of Florida and exercises its authority and carries out its functions within the jurisdiction of this court. Prior to September 5, 1975, plaintiff used 14 of the 17 days allotted annually for military leave under § 115.07 of the Florida Statutes. These 14 days were used for Reserve Duty. On August 27, 1975, plaintiff received orders, issued pursuant to 32 U.S.C. § 505, which ordered plaintiff to Full Time Training Duty with the National Guard for the period September 9, 1975 to November 6,

1975. Plaintiff requested a military leave of absence for this 59-day period. This request was denied; nevertheless plaintiff reported as ordered to Ft. Benning, Georgia.

Plaintiff's last day of actual employment with defendant was September 5, 1975. In accordance with Florida Department of Administration Rule 22 A–7.10(B), plaintiff was deemed to have abandoned his position by virtue of his absence for three consecutive workdays without authorized leave. On September 16, 1975, defendant advised plaintiff that he had been fired. Plaintiff completed his training with the National Guard on November 6, 1975. On the next day, plaintiff applied for reemployment with the defendant, at which time his application was denied. Such refusal to reemploy the plaintiff has continued to the present time.

### II. *Veterans' Reemployment Rights Act*

Section 2021 of the VRR Act applies to any person who leaves a position, other than a temporary position, with the United States Government or its political subdivisions (§ 2021(a)(A)) or with a State or its political subdivisions (§ 2021(a)(B)) for training and service in the Armed Forces. The thrust of § 2021 is unquestionably the protection of reemployment rights to persons who have been inducted into the Armed Forces.[1] Defendant argues that § 2021 applies only to inductees who have trained and served in the Armed Forces.

The scope of the VRR Act is not restricted to inductees of active military service, as the following language in § 2021(b)(3) makes clear:

"Any person who holds a position described in Clause (A) or (B) of subsection (a) of this section shall not be denied retention in employment or any promotion or other incident or advantage of employment because of *any obligation as a member of a Reserve component of the Armed Forces.*" (emphasis added)

1. Section 2021 is entitled "Right to reemployment of inducted persons; benefits protected." Titles in statutes should express the general subject of the law, however particularity in the title of a statute is not necessary nor desirable. See 73 Am.Jur.2d, Statutes, §§ 111–113. The title of § 2021 should not be considered a complete index of the particular section.

In addition, § 2024 enumerates the wide range of individuals who are accorded the reemployment protections of the VRR Act. Subsection (a) of § 2024 provides protection to enlistees; subsection (b)(1) provides protection to persons called to active duty, other than for the purpose of determining physical fitness and other than for training; subsection (b)(2) provides reemployment protection to Reserve members who voluntarily or involuntarily enter active duty. Subsection (c) grants reemployment rights to Reservists who serve an initial period of active duty for training of not less than three consecutive months. Subsection (d) protects employees of the United States or a State who leave their positions to be inducted into the Armed Forces or to undergo pre-induction physical examinations. The enumerated categories in § 2024, along with its title "Rights of persons who enlist or are called to active duty; Reserves", reinforces plaintiff's contention that the VRR Act is not limited to inductees.

■ The plaintiff in this case, as a former employee of the Florida DOT, falls within the terms of § 2024(d) as well as § 2021(b)(3). Section 2024(d) states:

"Any employee not covered by subsection (c) of this section who holds a position described in clause (A) or (B) of section 2021(a)[2] shall upon request be granted a leave of absence by such person's employer for the period required to perform *active duty for training or inac-*tive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training, . . . such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes." (emphasis supplied).

For purposes of § 2024(d), full-time training or other full-time duty performed by a member of the National Guard under 32 U.S.C. § 505 is considered active duty for training. 38 U.S.C. § 2024(f). Plaintiff, as a member of the National Guard, received his orders for Full Time Training Duty pursuant to 32 U.S.C. § 505; therefore his absence from employment was for "active duty for training" within the terms of § 2024(d). The court finds both § 2021(b)(3) and 2024(d) are applicable to plaintiff.

Plaintiff succinctly explains the legislative history of the VRR Act, and specifically the intent behind § 2021(b)(3) and 2024(d).[3] The Selective Training and Service Act of 1940 originally established veterans' reemployment right.[4] However, the 1940 Act did not provide employees of States and political subdivisions the means of enforcing their rights. In 1974, Congress amended the VRR Act to "extend full coverage to veterans who were employed by States and their political subdivisions."[5]

---

**2.** "Clause (A) or (B)" refers to § 2021(a)(A) or (B) which describe positions with the United States Government or a State respectively.

**3.** Section 2024 is a recodification of § 459(g) of 50 U.S.C. App. which stated that "all reemployment rights and benefits shall be provided . . . to certain Reserve and National Guard members who enter or are called to active duty or inactive duty training." Senate Comm. on Veterans' Affairs, Report on Vietnam Era Veterans' Readjustment Assistance Act of 1974, S.Rep. No. 93–907, 93rd Cong., 2d Sess. 112–113 (1974).

**4.** 54 Stat. 885; 50 U.S.C.A. Appendix § 308. The following is a historical progression of the 1940 Act:

The name of the Act was changed in 1948 to the Selective Training and Service Act of 1948 (62 Stat. 604) and in 1951 to the Univer-

sal Military Training and Service Act (65 Stat. 75). In 1967 the Act was renamed the Military Selective Service Act of 1967 (81 Stat. 100) and in 1971 the name was changed to the Military Selective Service Act (85 Stat. 348) and was found at 50 U.S.C. App. § 459. The reemployment provisions of the Military Selective Service Act were recodified in 1974 into Title 38, United States Code, by the Vietnam Veterans' Readjustment Act of 1974 (88 Stat. 1578, 38 U.S.C. § 2021, *et seq.*) Memorandum for Plaintiff in opposition to Defendant's Motion to Dismiss at 3, n. 1, *Peel v. Florida Dept. of Transportation.*

**5.** 88 Stat. 1578, P.L. 93–508. The reasons for the 1974 Amendments were stated in the Senate Report:

The Military Selective Service Act of 1967 declares it to be the sense of Congress that States and their subdivisions extend to veter-

Section 2021(b)(3) was added to the VRR Act to "prevent reservists and National Guardsmen not on active duty . . . from being discriminated against because of their Reserve membership."[6] Section 2024(d) was designed to accommodate those trainees who were absent from employment for "special training or instruction periods that may last 30, 60, or 90 days."[7]

■ The VRR Act guarantees certain reemployment rights which all States must uniformly comply with. The States are free to establish additional rights or protections for State or local employees than those provided by the VRR Act. See 38 U.S.C. § 2021(a). However, they are not free to impose restrictions on the reemployment rights granted by the VRR Act. Therefore, in accordance with § 2024(d), plaintiff should have been granted his request for military leave of absence, regardless of restrictions imposed by § 115.07 of the Florida Statutes. Defendant should have reemployed plaintiff on November 7, 1975 with such seniority, status, and salary as if plaintiff had not been absent.

■ The jurisdiction of this court is conferred by 38 U.S.C. § 2022, entitled "Enforcement procedures." This section of the VRR Act reveals Congress' unequivocal intent that this court be the forum for the determination of plaintiff's reemployment rights.[8] Furthermore, under § 2022, this court is authorized, and does hereby order, the Florida DOT to reinstate the plaintiff to his former position and to compensate him for loss of wages or other benefits accruing since November 7, 1975, when defendant refused to reemploy plaintiff.

### III. *The War Powers*

The parties in this case have argued that the statutory rights accruing to a National Guardsman under 38 U.S.C. § 2021(b)(3) and 2024(d) flow exclusively from different provisions of the Constitutional War Powers. Defendant contends that the above sections of the VRR Act were passed pursuant to Art. 1, § 8, cl. 16, and that this clause reserves to the States sole authority over the militia. Article I, § 8, cl. 16 states that Congress has the power:

> To provide for organizing, arming and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and

ans the same reemployment rights as do [sic] the Federal Government or private industry under present law. The provision now relating to State and local governments, however, is not binding under the law and, as a consequence, many returning veterans have found that their jobs in State or local government no longer exist. Furthermore, because these stated reemployment rights are not mandatory upon State and local governments, these veterans lose all benefits which would have accrued to them had they not entered military service.

. . . . .

Although a number of States have enacted legislation providing reemployment rights to veterans, the coverage, the rights provided, and the availability of enforcement machinery all vary considerably from state to state. Also some state and local jurisdictions have demonstrated a reluctance, and even an unwillingness to reemploy the veteran. S.Rep. No. 93–907, 93rd Cong., 2d Sess. 109–110 (1974).

6. S.Rep. No. 1477, 90th Cong., 2d Sess. (1968) U.S.Code Cong. & Admin.News 1968, at 3421.

7. S.Rep. No. 1672, 86th Cong., 2d Sess. (1960) U.S.Code Cong. & Admin.News 1960, p. 3077. This report accompanied legislation which created 50 U.S.C. App. § 459(g)(4), the predecessor of 38 U.S.C. § 2024(d).

8. Section 2022 of the VRR Act states:

If any employer, who is a private employer or a State or political subdivision thereof, fails or refuses to comply with provisions of section 2021(a), (b)(1), or *(b)(3), or section 2024,* the district court of the United States for any district . . . in which such State or political subdivision thereof exercises authority or carries out its functions, shall have the power . . . *specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages* or benefits suffered by reason of such employer's unlawful action. (emphasis added)

The section also prohibits the application of any state statutes of limitations to the above proceedings. Congress has emphasized its concern for uniform enforcement of the VRR Act among the States.

the Authority of training the Militia according to the discipline prescribed by Congress.

The plaintiff contends that Congress' power to enact general laws concerning the National Guard and Reservists, including the granting of reemployment rights, flows from Art. I, § 8, cl. 12 of the Constitution. That clause gives Congress the power to "raise and support Armies." For purposes of this case, the court need not decide which clause is the constitutional basis for the reemployment rights granted to plaintiff. Both clauses reflect Congress' power of ultimate control over the militia, now recognized as the National Guard, and the active Armed Forces. Art. I, § 8, cl. 16 reserves to the States the authority to train the National Guard "according to the discipline prescribed by Congress." The power to "raise and support Armies" under Art. I, § 8, cl. 12 is not only one of the most important powers of Congress, but is also broad and sweeping. *Johnson v. Powell*, 414 F.2d 1060, 1063–1064 (5th Cir. 1969).[9] The National Guard has been recognized as the "modern militia". *Maryland v. United States*, 381 U.S. 41, 14 L.Ed.2d 205, 85 S.Ct. 1293 (1965). As such, defendant argues that Congress' power to organize, arm, and discipline the National Guard emanates from Art. I, § 8, cl. 16, and that this clause commits the regulation of the National Guard to the States, except when members of a National Guard are "employed in the Service of the United States." *United States v. Dern*, 64 App.D.C. 81, 74 F.2d 485, 487 (1934). Defendant contends that for purposes of Art. I, § 8, cl. 16 such employment in the service of the United States occurs when the National Guardsman has been ordered into active service. *Williams v. United States*, 189 F.2d 607 (10th Cir. 1951).

Defendant's argument suffers serious flaws. Under § 2024(f) of the VRR Act, plaintiff's orders to report for full time training constituted "active duty for training in the Armed Forces of the United States." 38 U.S.C. § 2024(d). These orders called plaintiff into the service of the United States and subjected plaintiff to any federal laws enacted by Congress pursuant to its power "to provide for organizing, arming, and disciplining, the Militia." Art. I, § 8, cl. 16. *Maryland v. United States, supra*, and *Williams v. United States, supra*, do not stand for the proposition that National Guardsmen are under the exclusive control of the States. In both *Maryland* and in *Williams*, the National Guardsmen were not considered employed in the service of the United States for purposes of the Federal Tort Claims Act, 28 U.S.C.A. § 1346, 2671 et seq. In both cases, the courts held that the National Guardsmen were employees of the State and had not been ordered into active service of the United States; therefore, the Federal Tort Claims Act afforded no relief. The relief requested by plaintiff in this case is not predicated on the Federal Tort Claims Act; furthermore the plaintiff was ordered to full time active duty for training in the service of the United States.

---

**9.** In addition to Art. I, § 8, cl. 12 and 16, the power of Congress and the President to manage the country's national defense appears in other Constitutional provisions:

Among the many other provisions implementing the Congress and the President with powers to meet the varied demands of war, the following obviously command attention: "We the people of the United States, in order to form a more perfect Union, . . . provide for the common defence, . . . and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America." U.S.Const. Preamble.
"The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; . . .

"To declare War, . . .

"To provide and maintain a Navy;

"To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, . . . ." Id. Art. I, § 8. "The President shall be Commander in Chief of the Army and Navy of the United States, . . . . Id. Art. II, § 2, cl. 1.
*Lichter v. United States*, 334 U.S. 742, 755, n. 3, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948).

In recent years, the National Guard has been an organized force, capable of being assimilated into the regular military establishment of the United States. *Maryland v. United States*, 381 U.S. 41, 46, 85 S.Ct. 1293, 1297, 14 L.Ed.2d 205, 209 (1965). The National Defense Act of 1916 [10] (39 Stat. 166) authorized the National Guard to be equipped and trained like the regular army, "subject to federal standards and capable of being 'federalized' by units, rather than by drafting individual soldiers." The blending of the National Guard into the regular Armed Forces continued with the adoption of the dual enlistment concept:

> In 1933 Congress adopted the dual enlistment concept whereby an incoming guardsman joined both the National Guard of his home state and the National Guard of the United States, a reserve component of the U.S. Army. *The express purpose of the dual enlistment concept was to avoid the limitations of the militia clause and to organize the National Guard under the broader power to raise and support armies.* (*Johnson v. Powell*, 414 F.2d 1060, 1063 (5th Cir. 1969)). (emphasis supplied).

The Fifth Circuit Court of Appeals in *Johnson v. Powell, supra,* noted that Congress' power to raise and support armies was "broad and sweeping" [11] and that the dual enlistment system was a proper exercise of power under the "necessary and proper" clause (Art. I, § 8, cl. 18) to the raising and supporting of armies. The Fifth Circuit found nothing in the Constitution which prohibited the National Guard from functioning in such a dual role.

■ Although Art. I, § 8, cl. 16 reserves certain responsibilities concerning the National Guard to the respective States, there is little question that the broad power under Art. I, § 8, cl. 12 bestows upon Congress the authority to regulate the National Guard as an essential reserve component of the Armed Forces. *Gilligan v. Morgan,* 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). The reemployment rights granted to plaintiff by the VRR Act are simply an extension of Congress' plenary power under Art. I, § 8, cl. 12.

The over-riding policy behind legislation, passed pursuant to Art. I, § 8, cl. 12, is the maintenance of an adequate system of national defense. The exercise of a paramount governmental power such as the "War Powers" often subjects private citizens to incidental burdens. These incidental burdens sometimes result in other constitutional rights taking a "back seat" to the War Powers.

In *Trusteed Funds v. Dacey,* 160 F.2d 413 (1st Cir. 1947), the plaintiff voluntarily accepted a commission into the army. After serving in the army, the plaintiff sought reinstatement to his former position before his induction into the army. When the employer denied reinstatement, the plaintiff sued to protect his veterans' reemployment rights under § 8 of the Selective Training and Service Act of 1940.[12] The court held that § 8 of the 1940 Act imposed upon the employer an obligation he had not contracted to assume—namely the obligation to reemploy the plaintiff and not to discharge him without cause within one year after such restoration. The *Dacey* decision is of particular significance to the case *sub judice* because the VRR Act contains very similar language to § 8 of the 1940 Act. The court in *Dacey* stated that the terms of the 1940 Act should be liberally construed for the benefit of those who left private life to serve their country.

Being of such important governmental interest, the War Powers have been used to impair existing contract rights (*Larinoff v. United States,* 175 U.S.App.D.C. 32, 533 F.2d 1167 (1976); *Schwartz v. Franklin,* 412

---

**10.**  10 U.S.C. § 692 (1964 ed.).

**11.**  414 F.2d 1060, 1064 (1969). See also *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, *reh. den.* 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9

L.Ed.2d 644, 656 (1963); *Lichter v. United States,* 334 U.S. 742, 92 L.Ed. 1694, 68 S.Ct. 1294 (1948).

**12.**  54 Stat. 890, 56 Stat. 724, 58 Stat. 798, 50 U.S.C.A. Appendix, § 308.

F.2d 736 (9th Cir. 1969)) and to justify incidental limitations on First Amendment freedoms (*United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, *reh. den.*, 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968)).

The States have also been subjected to incidental restrictions as a result of federal legislation passed pursuant to the War Powers. Congress passed the Immunity Act of 1954 in order to facilitate more complete and open disclosure by persons possessing information regarding "any plans or attempts to interfere with or endanger, the national security or defense of the United States by treason, sabotage, espionage, sedition, seditious conspiracy . . . ."[13] The Immunity Act abolished the States' power to punish certain crimes committed in violation of state law. The Supreme Court stated the following in *Ullmann v. United States*, 350 U.S. 422, 436, 76 S.Ct. 497, 505, 100 L.Ed. 511 (1956):

> We cannot say that Congress' paramount authority in safeguarding national security does not justify the restriction it had placed on the exercise of the state power for the more effective exercise of conceded federal power.

Congress has traditionally had wide latitude in passing legislation pursuant to the War Powers. The Supreme Court of the United States has held that federal legislation providing educational benefits for veterans was plainly within Congress' power to raise and support armies. *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). The reemployment rights granted to National Guardsmen in the VRR Act unquestionably fall within Congress' power under Art. I, § 8, cl. 12.

### IV. *Tenth Amendment*

The Tenth Amendment to the United States Constitution reserves all powers to the state which are not delegated to the United States, nor prohibited to the states by the Constitution. This Amendment recognizes the constitutional command of a

"separate and independent existence"[14] for the States. Defendant cites two cases, *Fry v. United States*, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975) and *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), in its argument that the VRR Act "impairs the States' integrity or their ability to function effectively in a federal system." *Fry v. United States, supra.* Defendant contends that the provisions for military leave for National Guardsmen and the corresponding reemployment rights in the VRR Act effectively disrupts the States' authority to control state employees with respect to conditions of employment.

*Fry* and *National League* are definitive authorities describing the scope and limitations on Congress' power under the Commerce Clause. Art. I, § 8, cl. 3. However, in the case *sub judice* we are dealing with legislation passed pursuant to Congress' power to raise and support armies. Art. I, § 8, cl. 12. Different policy considerations surround legislation passed pursuant to Congress' power under Art. I, § 8, cl. 12. In *National League*, the Supreme Court struck down the 1974 amendments to the Fair Labor Standards Act because they extended the statutory minimum wage and maximum hour provisions to state and local government employees. The court held that the 1974 amendments directly displaced the states' freedom to structure the internal operations in areas of traditional governmental functions.

> "We have repeatedly recognized that there are attributes of sovereignty attaching to every state government which may not be impaired by Congress, not because Congress may lack an affirmative grant of legislative authority to reach the matter, but because the Constitution prohibits it from exercising the authority in that manner." (426 U.S. at 845, 96 S.Ct. at 2471, 49 L.Ed.2d at 253).

Meanwhile in *Fry v. United States, supra*, the Economic Stabilization Act of 1970 was

---

**13.** 68 Stat. 745, 18 U.S.C. (Supp. II) § 3486.

**14.** *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

upheld by the Supreme Court. By this Act, Congress authorized the President to stabilize wages and salaries, including those of state employees. The Supreme Court upheld the wage-restriction regulations because they did not constitute a drastic invasion of state sovereignty. These two cases reveal that Congress' power under the Commerce Clause is very broad; however, it is not absolute. The mere grant to Congress of power to regulate commerce does not preclude states from enacting concurrent legislation concerning commerce. *Cooley v. Board of Wardens*, 53 U.S. 299, 12 How. 299, 13 L.Ed. 996 (1851).

■ The War Powers in the Constitution have been an area where the Congress traditionally wields supreme plenary power. Congress has jealously protected its powers under Art. I, § 8, cl. 12 from any abridgment by the states. The Fifth Circuit described the scope of these powers with great brevity:

> The war power of the federal government is its supreme power. When it is in action it is transcendent. . . .
>
> *St. Johns River Shipbuilding Co. v. Adams*, 164 F.2d 1012, 1015 (5th Cir. 1947).

This power is broad enough to render lawful what would be unlawful in a different context. *Simmons v. United States*, 406 F.2d 456 (5th Cir. 1969).

■ Generally, a governmental regulation is sufficiently justified if it is within a constitutional power of the government, if it furthers a substantial governmental interest, and if incidental restrictions on state functions are no greater than is essential to the furtherance of that interest. *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, *reh. den.*, 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). One justification for the rights granted to National Guardsmen under the VRR Act is our increased reliance on Reserve forces for the national defense of our country. Congressional records indicate the following:

> Active duty military strength has been reduced some 601,000 (−22 percent) since 1964 pre-Vietnam levels—from 2,687,000 in 1964 to 2,086,000 in 1976. Part of this reduction has been accomplished through increased reliance on reserve forces, even though there has been a 6 percent reduction in Selected Reserve strength in the same period. Selected Reserve members will make up about 31 percent of the total active duty plus selected reserve strength in 1976.

S.Rep.No. 94–562, 94th Cong., 1st Sess., at p. 5.

■ As caretaker of our national defense, Congress bestowed upon plaintiff certain reemployment rights following successful completion of training duties as a National Guardsman. The State of Florida must yield to these rights even if it means the incidental loss of certain controls over state employees. In this case, the Tenth Amendment does not afford defendant grounds to challenge the constitutionality of the VRR Act. In *Fox v. Brown*, 402 F.2d 837 (2nd Cir. 1968), *cert. den.*, 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471 (1969), the plaintiff tried to annul orders which discharged him from the Air National Guard and directed him to report for active duty with the United States Air Force. These orders came as a result of the plaintiff's unsatisfactory participation in his reserve unit. The plaintiff claimed that the orders were in derogation of the Tenth Amendment because they usurped powers delegated to the states by the Constitution. The court concluded that the plaintiff's argument ignored the plenary power of Congress over the raising and maintenance of Armed Forces. 402 F.2d at 841.

### V. *The Supremacy Clause and Preemption*

■ The plenary power accorded Congress pursuant to Art. I, § 8, cl. 12 preempts states from enacting legislation limiting or restricting such Congressional power. Preemption issues focus on the role of the Supremacy Clause of the Constitution. Art. VI, § 2. In the case *sub judice*, the issue boils down to whether F.S. § 115.-07 stands as an obstacle to the accomplishment and objectives of the VRR Act. Section 115.07 of the Florida Statutes limits

plaintiff's military leave to 17 days annually; this stands in direct opposition to the rights granted plaintiff under the VRR Act.[15] The United States Supreme Court has announced the following test for preemption:

> The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field; not whether they are aimed at similar or different objectives. *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 256–257, *reh. den.*, 374 U.S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082 (1963).

For purposes of the case *sub judice*, the nature of the subject matter in the VRR Act and Congress' explicit design for uniform enforcement among the States in § 2022 mandate the displacement of F.S. 115.07. The reemployment rights granted in the VRR Act are subject to exclusive federal regulation in order to achieve a uniformity vital to our national interests.

## VI. *The Eleventh Amendment*

The parties in this case cite identical cases for their respective positions as to whether or not the Eleventh Amendment[16] bars a suit against the State of Florida. The plaintiff contends that Congress' enactment of the VRR Act specifically authorizes suits of this nature against the State of Florida, thus abrogating the sovereign immunity of the Eleventh Amendment. De-

fendant alleges, on the other hand, that the Eleventh Amendment bars suit against the State of Florida and particularly prohibits the award of monetary damages to the plaintiff. Although the arguments of both parties are tenable in light of the confusion surrounding the Eleventh Amendment defense, the court feels the plaintiff's arguments are more closely in tune with judicial trends created by the United States Supreme Court.

■ An analysis in chronological order of previous decisions concerning the Eleventh Amendment provides insight into the rationale for this court's finding that the VRR Act renders States amenable to suit in the federal courts and renders States liable for monetary damages.

In *Parden v. Terminal Railway of the Alabama State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233, *reh. den.*, 377 U.S. 1010, 84 S.Ct. 1903, 12 L.Ed.2d 1057 (1964), an employee of a state-operated railroad filed suit in federal court to recover damages under the Federal Employees' Liability Act (hereinafter FELA) for personal injuries sustained while employed by the State of Alabama. The State of Alabama moved to dismiss the action on the ground that the railway was an agency of the State and that the State had not waived its sovereign immunity from suit. The Supreme Court focused on Congress' plenary power under the Commerce Clause to abrogate a state's immunity from suit. The Commerce Clause had been the constitutional power under which Congress enacted the FELA. The court noted that a state's sovereign

---

**15.** Three possible alternatives occur when a state regulation stands side-by-side with a federal law on the same topic:

> (i) the [state law] may be in direct *conflict* with the federal law, in which case the state law must yield, (ii) the [state law] may *coincide* or substantially imitate the federal law, a situation which may be desirable if concurrent enforcement is the congressional policy, or (iii) the [state law] may *supplement* the federal law and thereby extend or increase the degree of regulation.

*Chemical Specialties Manufacturers Association, Inc. v. Clark*, 482 F.2d 325, 326–7 (5th Cir. 1973).
Alternative (i) applies in the circumstances of this case.

**16.** The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

power was diminished to the extent of the Enumerated Powers granted to the federal government in the Constitution. Art. I, § 8. Pursuant to its power to regulate interstate commerce, Congress subjected states to suit under the FELA.

The *Parden* decision stands for the proposition that a state's involvement in certain "spheres" of activity, within Congress' plenary power, may subject the state to suit. A state's amenability to suit under a federal statute, whether it be the FELA or the VRR Act, is a proper means for Congress to regulate certain "spheres" of activity. In *Parden,* Congress' power to subject states to suit fell under the Commerce Clause (Art. VI, § 2); in the case *sub judice* Congress' power to subject the State of Florida to suit falls under the power to raise and support armies. Art. I, § 8, cl. 12.

In *Employees of the Dept. of Public Health & Welfare v. Dept. of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), state employees of Missouri sued for overtime compensation under the Fair Labor Standards Act. This Act failed to indicate Congress' intent to subject States to suit. The Supreme Court declined to extend *Parden, supra,* to cover every exercise of the commerce power "where the purpose of Congress to give force to the Supremacy Clause by lifting the sovereignty of the States and putting the States on the same footing as other employers [was] not clear." 411 U.S. at 287, 93 S.Ct. at 1619, 36 L.Ed.2d at 257–258. Congress had not clearly abrogated State immunity in the Fair Labor Standards Act; the Eleventh Amendment barred the above suit against the State of Missouri.

Both parties in this case allege that *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), is authority supporting their respective positions. Plaintiff contends *Edelman, supra,* does not bar his suit against the State of Florida for monetary damages; whereas defendant alleges that *Edelman, supra,* bars plaintiff's claim.

In *Edelman,* a federal court's remedial power, consistent with the Eleventh Amendment, was limited to prospective injunctive relief [17] and precluded retroactive awards requiring payments from state treasuries. Respondents alleged that Illinois state officials were administering the federal-state program for Aid to the Aged, Blind, or Disabled (hereinafter AABD) inconsistently with federal regulations and in violation of respondents' Fourteenth Amendment rights. The Supreme Court reversed lower rulings which had ordered state officials to remit AABD benefits wrongfully withheld from respondents.

*Edelman* reinforced the proposition that the Eleventh Amendment generally barred suits by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." 415 U.S. at 663, 94 S.Ct. at 1356, 39 L.Ed.2d at 673. But *Edelman* did not foreclose exceptions to this general rule. The respondents' failure to recover wrongfully withheld AABD benefits was based on the fact that the Social Security Act, which regulated the AABD program, did not authorize the award of retroactive benefits against a state. The Supreme Court distinguished the statutes involved in *Parden, supra,* and in *Employees, supra,* with the Social Security Act in *Edelman* :

Both Parden and Employees involved a congressional enactment which by its terms authorized suit by designated plaintiffs [18] against a general class of de-

**17.** There has been little question since *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) that the Eleventh Amendment does not bar federal courts from granting prospective injunctive relief against state officials.

**18.** In *Employees of the Department of Public Health & Welfare v. Department of Public*

*Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), the state employees could not recover overtime compensation from the State of Missouri because the Fair Labor Standards Act limited recovery against states to suits brought by the Secretary of Labor.

fendants which literally included States or state instrumentalities.

. . . . .

[I]n this case [Edelman] the threshold fact of congressional authorization to sue a class of defendants which literally includes States is wholly absent.

(415 U.S. at 672, 94 S.Ct. at 1360, 39 L.Ed.2d at 678)

The congressional authorization to sue the State of Florida for monetary damages is not lacking in this case. Under § 2024 of the VRR Act, when a qualified National Guardsman is denied reemployment by a state or political subdivision thereof, "the district court of the United States . . . shall have the power . . . specifically to require such employer to comply with such provisions [of the VRR Act] and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." 38 U.S.C. § 2022. The *Edelman* decision does not preclude the plaintiff in this case from recovering monetary damages against the State of Florida.

The most recent Supreme Court pronouncement on states' amenability to suit occurred in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In that case, present and retired male employees of the State of Connecticut alleged that the State's retirement benefit plan discriminated against them due to their sex, thereby violating the 1972 amendments to Title VII of the Civil Rights Act of 1964. The Supreme Court held that under § 5 of the Fourteenth Amendment,[19] Congress could make states liable for compensatory damages and attorneys' fees arising from states' discriminatory employment practices.

Recently, the Fifth Circuit Court of Appeals in *Jagnandan v. Giles*, 538 F.2d 1166 (5th Cir. 1976), denied a monetary recovery to an individual who sued the Mississippi State University, a state institution, for violation of his Fourteenth Amendment rights. The court held that the Eleventh Amendment barred any reimbursement of excess tuition payments to the individual. However, the court's decision rested on the fact there was no congressional authorization permitting federal courts to award monetary damages in favor of private individuals and against states. This decision is fully consistent with the *Fitzpatrick* rationale.

*Fitzpatrick* and the case *sub judice* are factually similar with the presence of statutes, Title VII in the former case and the VRR Act in the latter, which explicitly authorize recoveries from a State. In *Fitzpatrick*, this congressional authorization was enacted pursuant to the enforcement clause (§ 5) of the Fourteenth Amendment. However, nothing in previous decisions indicates that § 5 is the exclusive avenue to abrogate state sovereignty from suit. In this case, the congressional authorization to sue a state and to recover monetary damages flows from Art. I, § 8, cl. 12. Because of their paramount importance to our country's national defense, the War Powers have been the source of Congress' authority to abrogate the States' Eleventh Amendment immunity from suit, without the necessity of an enforcement clause.

## VII. *Joinder*

■ Defendant argues that the Florida Department of Administration (hereinafter Florida DOA) is an essential party to this suit pursuant to Rule 19 of the Federal Rules of Civil Procedure. This argument lacks merit for two reasons:

(1) Section 2022 of the VRR Act specifies that the employer shall be the only necessary party. Plaintiff has been under the direct employment of the Florida DOT, not the Florida DOA, and

(2) regardless of the above, whether the Florida DOT and/or the Florida DOA is named defendant, the fact remains that the suit is one against the State of Florida. It is not necessary for the State to be actually named in the suit. *Jag-*

19. Section 5 of the Fourteenth Amendment grants Congress the power to enforce the sub-stantive provisions of the Fourteenth Amendment by "appropriate legislation."

*nandan v. Giles*, 538 F.2d 1166, 1173 (1976).

Accordingly, this court hereby:

1. Grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment.

2. Decrees that plaintiff was terminated by defendant and denied reemployment in violation of the Veterans Reemployment Rights Act.

3. Orders defendant to reinstate plaintiff to his preservice position of employment in accordance with the provisions of the Veterans Reemployment Rights Act.

4. Orders defendant to compensate plaintiff for loss of wages and other benefits accruing to plaintiff since November 7, 1975 because of the aforementioned violations of the Veterans Reemployment Rights Act.

Judgment will be entered accordingly.