Dear Senator Frappier:
This is to acknowledge receipt of your request for a formal opinion from this office which reads as follows:
 May a member of the Missouri Public School Retirement System receive equivalent service credits in the retirement system, who after entering employment, serves in the armed forces of the United States on active duty or active duty for training?
 If affirmative, what is the maximum amount of equivalent service credit that may be received? Indicate method of computation.
 If affirmative, please indicate the responsibilities of the retirement system, the employer and the member in obtaining equivalent service credits.
In addition to your opinion request, you have provided us with a letter from your constituent which provides in part as follows:
 I am a resident of the Second District now living in Virginia while serving on active duty and need your assistance in obtaining relief from a provision of Missouri law that prevents my entitlement to military leave credits in the Missouri Public School Retirement System. A review of § 2021, Chapter 43, Title 38, U.S.C. indicates that retirement credits must be provided for time served on active duty when veterans are reinstated with their former employers.
 In December 1975, after six years as an administrator with the public schools of Missouri, I was offered a special tour of active duty at Headquarters, Department of the Army, Washington, D.C. The school district granted a military leave of absence and I plan to return in December this year. § 2021(b), Title 38 provides that it is the sense of Congress that reinstatement shall include the seniority, status, pay and benefits that would have been enjoyed if the employee had been in continuous employment. It is clear that this provision applies to employers of the states and political subdivisions (§ 2021(a)).
 I communicated with the Public School Retirement System unsuccessfully to date to obtain military leave credits for the four years' service that will accrue upon my return. If I had been in continuous employment with the school district I would have been entitled to participate in the retirement system since it is mandatory for all certificated employees of the public schools of Missouri.
In connection with the above, subsection 3 of § 169.055 RSMo 1978, provides as follows:
 3. A member who enters the service of the armed forces of the United States of America during an emergency involving national defense, provided he is a teacher in a district included in the system at the time he is inducted, enlisted, or called to active duty, and who without voluntary reenlistment after the cessation of such national emergency is reemployed as a teacher within one year after discharge from such service, or within one year of said date plus time spent as a student in a standard college or university in further preparation for service as a public school employee, shall not be subject to the provisions of subsection 4 of section 169.050 with regard to termination of membership because of unemployment as a teacher due to his actual service in the armed forces of the United States and such subsequent period spent as a student. Such a member may elect within five years after his reemployment, or before July 1, 1958, and prior to retirement, whichever is later, to purchase membership service credit with a rate of compensation the same as the annual salary rate at which he was employed at the time of his induction for the period of service in the armed forces of the United States. The purchase shall be effected by the member's paying to the retirement system with interest the amount he would have contributed thereto had he been teaching during the period for which he is electing to purchase credit, and had his compensation during such period been the same as the annual salary at the time of his induction, and had sections 169.010 to 169.130 as in effect at date of purchase been in effect at that time. The payment shall be made over a period of not longer than five years, measured from the date of election, and with interest on the unpaid balance.
Thus, under the above statutory provision, a member of the Retirement System who enters the service of the Armed Forces of the United States of America during an emergency involving the national defense, provided he is a teacher in a district included in the System at the time he is inducted, enlisted, or called to active duty, and who without voluntary reenlistment after the cessation of such national emergency is reemployed as a teacher within one year after discharge from such service, or within one year of said date plus time spent as a student in a standard college or university in further preparation for service as a public school employee, shall not be subject to the provisions of subsection 4 of § 169.050, RSMo 1978, with regard to termination of membership because of unemployment as a teacher due to his actual service in the Armed Forces of the United States and such subsequent period spent as a teacher. The member may also purchase retirement credit for the military service.
The Vietnam Era Veterans' Readjustment Assistance Act of 1974 (P.L. 93-508; 88 Stat. 1578) was enacted into law over presidential veto on December 4, 1974. Section 404 of that Act, effective upon enactment, recodified the then-existing law on veterans' reemployment rights into a new Chapter 43 of Title 38 of the United States Code. Among other things, the legislation provided substantive amendments which entitled employees of state and political subdivisions thereof, as well as employees of the United States Postal Service, to the same reemployment rights of federal employees and those of private employers. Section 2024 of Chapter 43, entitled "Rights of Persons Who Enlist or are Called to Active Duty; Reserves" of the Veterans' Reemployment Act (hereinafter referred to as Act) is found in Title 38 of the United States Code Annotated. Section 2024 reads in part as follows:
 (a) Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enlists in the Armed Forces of the United States (other than in a Reserve component) shall be entitled upon release from service under honorable conditions to all of the reemployment rights and other benefits provided for by this section in the case of persons inducted under the provisions of the Military Selective Service Act [50 USCS Appx §§ 451-473] (or prior or subsequent legislation providing for the involuntary induction of persons into the Armed Forces), if the total of such person's service performed between June 24, 1948, and August 1, 1961, did not exceed four years, and the total of any service, additional or otherwise, performed by such person after August 1, 1961, does not exceed five years, and if the service in excess of four years after August 1, 1961, is at the request and for the convenience of the Federal Government (plus in each case any period of additional service imposed pursuant to law).
 (b)(1) Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enters upon active duty (other than for the purpose of determining physical fitness and other than for training), whether or not voluntarily, in the Armed Forces of the United States or the Public Health Service in response to an order or call to active duty shall, upon such person's relief from active duty under honorable conditions, be entitled to all of the reemployment rights and benefits provided for by this chapter [38 USCS §§ 2021-2026] in the case of persons inducted under the provisions of the Military Selective Service Act [50 USCS Appx §§ 451-473] (or prior or subsequent legislation providing for the involuntary induction of persons into the Armed Forces), if the total of such active duty performed between June 24, 1948, and August 1, 1961, did not exceed four years, and the total of any such active duty, additional or otherwise, performed after August 1, 1961, does not exceed four years (plus in each case any additional period in which such person was unable to obtain orders relieving such person from active duty).
 (2) Any member of a Reserve component of the Armed Forces of the United States who voluntarily or involuntarily enters upon active duty (other than for the purpose of determining physical fitness and other than for training) or whose active duty is voluntarily or involuntarily extended during a period when the President is authorized to order units of the Ready Reserve or members of a Reserve component to active duty shall have the service limitation governing eligibility for reemployment rights under subsection (b)(1) of this section extended by such member's period of such active duty, but not to exceed that period of active duty to which the President is authorized to order units of the Ready Reserve or members of a Reserve component. With respect to a member who voluntarily enters upon active duty or whose active duty is voluntarily extended, the provisions of this subsection shall apply only when such additional active duty is at the request and for the convenience of the Federal Government.
 (c) Any member of a Reserve component of the Armed Forces of the United States who is ordered to an initial period of active duty for training of not less than three consecutive months shall, upon application for reemployment within thirty-one days after (1) such member's release from such active duty for training after satisfactory service, or (2) such member's discharge from hospitalization incident to such active duty for training, or one year after such member's scheduled release from such training, whichever is earlier, be entitled to all reemployment rights and benefits provided by this chapter [38 USCS §§ 2021-2026] for persons inducted under the provisions of the Military Selective Service Act [50 USCS Appx §§ 451-473] (or prior or subsequent legislation providing for the involuntary induction of persons into the Armed Forces), except that (A) any person restored to or employed in a position in accordance with the provisions of this subsection shall not be discharged from such position without cause within six months after that restoration, and (B) no reemployment rights granted by this subsection shall entitle any person to retention, preference, or displacement rights over any veteran with a superior claim under those provisions of title 5 [5 USCS § 101 et seq.] relating to veterans and other preference eligibles.
As a result of the above, subsection (a) of Section 2024 of the Act provides protection to enlistees; subsection (b)(1) provides protection to persons called to active duty, other than for the purpose of determining physical fitness and other than for training; subsection (b)(2) provides reemployment protection to reserve members who voluntarily or involuntarily enter active duty; and subsection (c) grants reemployment rights to reservists who serve an initial period of active duty for training for not less than three consecutive months.
The reemployment rights program is administered by the Labor-Management Services Administration (LMSA) in the Department of Labor and within LMSA, specifically by the office of Veterans' Reemployment Rights (OVRR). See 38 U.S.C.A., § 2025. In this regard, it has been pointed out that according to the Office of OVRR of the Department of Labor, a reemployed veteran's military service time must be counted toward his continuous service with his employer for the purpose of determining his eligibility for retirement benefits. Thus, where retirement annuity or pension is a right or benefit maturing after the veteran's reemployment, the veteran's military service may not be treated as if he were on leave of absence, but must be counted as if he had remained continuously employed rather than absent for military service except with certain exceptions which are not here applicable. Further, where the pension plan requires a certain number of years of service with the employer before the employee can become a participant or before vesting occurs, or before the employee can retire with annuity rights, the veteran's military service time must be counted toward the fulfillment of these time requirements. See, 1 FRES,Job Discrimination, § 7:32, p. 48.
As a result of the foregoing discussion of state and federal legislation, it is submitted that the first issue for consideration is whether or not subsection 3 of § 169.050, RSMo 1978, is in an irreconcilable conflict with § 2024 of the federal Act (38 U.S.C.A., § 2021, et seq.). When such conflicts exist it is a fundamental principle of constitutional law based on the supremacy clause of the United States Constitution (Art. VI, Clause 2) that the federal act will prevail over the state act to the extent that it preempts it. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23 (1924);Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).
 I. PREEMPTION ANALYSIS
The Supreme Court of the United States has indicated that in a preemption analysis it is necessary to find a congressional intent to preemptively occupy the field or the existence of a true and irreconcilable conflict between state and federal law. FloridaLime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 141,83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). In this regard, we have previously pointed out in our discussion of the federal legislation, that substantive amendments were added in 1974 which entitled employees of state and political subdivisions thereof to the same reemployment rights of federal employees and those of private employers. 38 U.S.C.A., § 2021. The reasons for the 1974 amendments were stated in the senate report:
 The Military Selection Service Act of 1967 declares it to be the sense of Congress that States and their subdivisions extend to veterans the same reemployment rights as do [sic] the Federal Government or private industry under present law. The provision now relating to State and local governments, however, is not binding under the law and, as a consequence, many returning veterans have found that their jobs in State or local government no longer exist. Furthermore, because these stated reemployment rights are not mandatory upon State and local governments, these veterans lose all benefits which would have accrued to them had they not entered military service.
* * *
 Although a number of States have enacted legislation providing reemployment rights to veterans, the coverage, the rights provided, and the availability of enforcement machinery all vary considerably from state to state. Also some state and local jurisdictions have demonstrated a reluctance, and even an unwillingness to reemploy the veteran. S. Rep. No. 93-907, 93rd Cong., 2d Sess. 109-110 (1974).
Thus, in view of the above legislative history, it seems clear that the Congress of the United States intended to preemptively occupy the field of veteran's reemployment rights.
Further, in Alabama Power Company v. Davis, 431 U.S. 581,97 S.Ct. 2002, 52 L.Ed.2d 595 (1977), one Davis became a permanent employee of the Alabama Power Company on August 16, 1936, and continued to work until March 18, 1943, when he left to enter the military. After serving the military for thirty months, he resumed his position with Alabama Power, where he worked until he retired on June 1, 1971. Davis received credit under the company pension plan for his service from August 16, 1937, until the date of his retirement, with the exception of the time he spent in the military and some time spent on strike. Davis claimed that § 2021 of the Act required Alabama Power to give him credit toward his pension for his period of military service. Thereafter, he sued to vindicate that asserted right. On certiorari, the United States Supreme Court affirmed. In an opinion expressing the unanimous view of the court, it was held that under § 2021 of the Act, the employee was entitled to credit towards his pension under his employer's pension plan for the time of his military service, since the employee would almost certainly have accumulated accredited employment service for the time of his military tour had he remained continuously employed, in view of his work history before and after his tour, and since payments made under the pension plan constituted a reward for length of service rather than compensation for services.
Also in Peel v. Florida Department of Transportation,443 F. Supp. 451 (N.D. Fla. 1977), an action was brought by an employee of the Florida Department of Transportation to obtain certain rights under the Veterans' Reemployment Rights Act. The federal district court held that the plaintiff should have been granted his request for military leave of absence from his employment with the defendant Florida Department of Transportation when the request was made pursuant to his orders for full time training duty as a member of the National Guard, regardless of certain restrictions imposed by a Florida statute. The court further held that the plaintiff was entitled upon his return to reemployment by the defendant Florida Department of Transportation with such seniority, status and salary as if he had not been absent. There were numerous issues discussed in the case, one of which, was whether or not the state statute has been preempted by the federal act. In this regard, the federal district court made the following comments at pages 459 and 460:
V. The Supremacy Clause and Preemption
 The plenary power accorded Congress pursuant to Art. I, § 8, cl. 12 preempts states from enacting legislation limiting or restricting such Congressional power. Preemption issues focus on the role of the Supremacy Clause of the Constitution. Art. VI, § 2. In the case sub judice, the issue boils down to whether F.S. § 115.07
stands as an obstacle to the accomplishment and objectives of the VRR Act. Section 115.07 of the Florida Statutes limits plaintiff's military leave to 17 days annually; this stands in direct opposition to the rights granted plaintiff under the VRR Act. The United States Supreme Court has announced the following test for preemption:
 The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field; not whether they are aimed at similar or different objectives. Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 256-257, reh. den, 374 U.S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082 (1963).
 For purposes of the case sub judice, the nature of the subject matter in the VRR Act and Congress' explicit design for uniform enforcement among the States in § 2022 mandate the displacement of F.S. 115.07. The reemployment rights granted in the VRR Act are subject to exclusive federal regulation in order to achieve a uniformity vital to our national interests.
As a result, the Florida statute was preempted by the federal legislation.
Subsequently, in Schaller v. Board of Education of ElmwoodLocal School District, 449 F. Supp. 30 (N.D. Ohio 1978), a teacher who had voluntarily left the employment of a local school district in Ohio to enlist in the Armed Services, and who, upon return therefrom, was not timely reinstated to the same position or one of like seniority or status, brought an action under the Veterans' Reemployment Act. In discussing the federal legislation, the following comment was made by the court at page 33:
 Plaintiff here is a former employee of a state agency. However, the principles of comity and federalism which underlie the relationship between the states and the national government have less significance in the area of Congress' authority to raise and support armies. U.S. Const. art. I, § 8, cl. 12; Peel v. Florida Department of Transportation, supra; Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644
(1963); Johnson v. Powell, 414 F.2d 1060
(5th Cir. 1969). While, for instance, minimum wage and overtime pay provisions of the Fair Labor Standards Act could not be enforced against the states, National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the responsibility of the national government to raise and support the military places the national government in a special position vis a vis the states. The war powers delegated to the national government give Congress broad powers which should not be limited or restricted unnecessarily. Peel v. Florida Department of Transportation, supra; Simmons v. United States, 406 F.2d 456 (5th Cir. 1969); St. John's River Shipbuilding Co. v. Adams, 164 F.2d 1012 (5th Cir. 1947). Thus, this Court finds that the defendant, which has not asserted to the contrary, is subject to the commands of the statute.
Therefore, the court ruled in favor of the teacher and among other matters, held that the local school district was subject to the commands of federal legislation guaranteeing veterans that the job they had before they entered the military would be available to them upon their return.
As a result of the above, it is our view that the Congress of the United States intended to preemptively occupy the field of veterans reemployment rights. In addition, it is submitted that the conflict between subsection 3 of § 169.055 RSMo 1978 and § 2024 of the federal legislation is readily apparent. Subsection 3 of § 169.055, RSMo 1978, provides in part that a member of the Retirement System shall be entitled to certain rights who enters the service of the Armed Forces of the United States during an emergency involving the national defense. However, § 2024 of the federal statutes expresses no such prohibition against veterans' reemployment rights. Further, the federal act guarantees certain reemployment rights which all states must uniformly comply with. The states are free to establish additional rights or protections for state or local employees, but they are not free to impose restrictions on the reemployment rights granted by the federal legislation. Peel v. Florida Department ofTransportation, supra. Therefore, it is our opinion that the provisions of subsection 3 of § 169.055, RSMo 1978, have been preempted by the provisions of § 2024 of the Veterans' Reemployment Rights Act to the extent that they are in conflict with the federal legislation.
 II. DISCUSSION OF MILITARY SERVICE CREDIT UNDER § 169.055, RSMo 1978
We will next consider the issue raised in your opinion request as to the maximum amount of military service credit and the method of computation under the provisions of subsection 3 of § 169.055, RSMo 1978. In this regard, omitting the provision relating to membership in the Armed Forces during an emergency involving national defense, a member of the Retirement System under this statutory provision may purchase retirement credit for time spent in the Armed Forces after July 1, 1946. In order to qualify for such a purchase, the member must have been teaching in a district included in the Retirement System at the time of his entry into active military duty and must return to such teaching following separation from the Armed Forces. The return to teaching must be within one year of the date of separation from active duty or within one year of that date plus time spent in a full time attendance at an educational institution. The election to purchase military credit must be made within five years of the date or reentry into teaching following military service.
Further, the cost of military credit is based upon the salary rate the member was earning as a teacher at the time of his induction into military service. The contribution for the credit is the rate in effect at the time of application for purchase. The member is required to pay the contributions and interest charges within five years of the date of application to purchase. Lastly, military credit does not require a matching employer contribution, but only member contributions and interest.
It should be noted that the above provisions of subsection 3 of § 169.055, RSMo 1978, are not in conflict with the federal legislation. Thus, it has been pointed out by the Department of Labor that where the veteran in order to have achieved full status in a contributory pension plan had he remained present, would have had to make contributions of his own, he must make those employee contributions after his return as increased by interest, dividends, capital gains, etc., in the meantime, if he is to qualify for the full pension plan status to which he is otherwise entitled by law. See Department of Labor, Veterans' ReemploymentRights Handbook, 97 (1970).
CONCLUSION
The opinion of this office is as follows:
1. The provisions of subsection 3 of § 169.055 RSMo 1978, relating to the eligibility of a teacher to receive military service credit for military duty in the Armed Forces of the United States of America during an emergency involving national defense have been preempted to the extent that they are in conflict with § 2024 of Chapter 43 of Title 38 of the United States Code Annotated.
2. A teacher is eligible to receive military service credit as a member of the Public School Retirement System of Missouri upon meeting all other statutory requirements of § 169.055 RSMo 1978.
The foregoing opinion, which I hereby approve, was prepared by my assistant, B. J. Jones.
Sincerely,
 JOHN ASHCROFT Attorney General