**Jose O. CAMACHO, Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION OF the COMMONWEALTH OF PUERTO RICO, Defendant.**

**Civ. No. 77–1609.**

United States District Court,
D. Puerto Rico.

May 22, 1978.

Julio Morales Sanchez, U. S. Atty., San Juan, P. R., for plaintiff.

Secretary of Justice of Puerto Rico, San Juan, P. R., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

Plaintiff herein filed the instant case on October 21, 1977, against defendant, the Public Service Commission of the Commonwealth of Puerto Rico, under Title 38, United States Code, Section 2021 *et seq.,* invoking the jurisdiction of this Court under Title 38, United States Code, Section 2022. The Federal statute on which plaintiff has based his claim is commonly known as the Veterans' Reemployment Rights Act ("the Act") and, pursuant to the same, plaintiff seeks to secure his reemployment with defendant after a period of active duty with the United States Armed Forces. The complaint also contains a prayer for the restitution of lost wages for the period he was not employed following defendant's alleged refusal to reemploy him plus pre-judgment interest on the monetary award together with interest from the date of judgment.

Subsequently, defendant filed a motion to dismiss on the ground that this action is barred by the Eleventh Amendment to the Constitution of the United States and that, therefore, we lack jurisdiction to entertain the action.

■ The purpose of the Act here in question was to protect those persons who left a civilian job in order to serve with the United States Army. *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed.2d 1230 (1946). With such goal in mind, Congress provided that a veteran who left a civilian job must, upon his return from service, be restored by his employer ". . . to such position or to a position of like seniority, status, and pay." Title 38, United States Code, Section 2021(a). By virtue of an amendment enact-

ed in 1974, the reemployment provisions of the Act were specifically extended to veterans employed by States and their political subdivisions. (See: S.Rep. No. 93–907, 93d Cong., 2d Sess. at p. 109).

■ Defendant's contention in support of its motion to dismiss is that this 1974 Amendment which allows an action in a Federal court against the state is an unconstitutional encroachment of the state's sovereign immunity guaranteed by the Fourteenth Amendment. Defendant alleges that the Eleventh Amendment bars suit against the Commonwealth of Puerto Rico and particularly prohibits the award of monetary damages to the plaintiff. There is no question in this regard that the Commonwealth of Puerto Rico enjoys the sovereign immunity accorded to the States of the Union and guaranteed by the Eleventh Amendment to the Constitution of the United States. *Ursulich v. P. R. National Guard,* 384 F.Supp. 736 (D.C.P.R., 1974).

Plaintiff, on the other hand, contends that Congress enacted the Act here in question under the powers granted by Article I, Section 8, Clause 12, of the Constitution of the United States, authorizing it to "raise and support Armies" and Clause 18 of that same Section, granting Congress the power "To make all laws . . . necessary and proper for carrying into Execution the (war making) powers . . .". Thus, plaintiff argues that the present case deals with a sphere of activity directly regulated by Congress pursuant to its War Powers flowing from the above mentioned constitutional provision and that, consequently, the state is foreclosed from invoking the protection afforded by the Eleventh Amendment. To substantiate this claim, plaintiff relies on the Federal constitutional doctrine that a state's sovereign power is diminished to the extent of the Enumerated Powers granted to the Federal Government in Article I, Section 8 of the Constitution, the war making power being one of such enumerated powers. In support of this contention plaintiff cites the cases of *Parden v. Terminal Railway of the Alabama State Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12

L.Ed.2d 233 (1964) and distinguishes *Employees v. Missouri Public Health Dept.,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). We shall discuss these cases later on.

## ANALYSIS

■ We begin by stating that the Act herein in question was enacted pursuant to Congress' war making powers.[1] The original Act was entitled the Selective Training and Service Act of 1940 (54 Stat. 885, 50 U.S.C. App. Section 308). The name of the Act was changed in 1948 to the Selective Training and Service Act of 1948 (62 Stat. 604) and in 1951 to the Universal Military Training and Service Act (65 Stat. 75). In 1967, the Act was renamed the Military Selective Service Act of 1967 (81 Stat. 100) and in 1971, the names were changed to the Military Selective Service Act (85 Stat. 348) and was found at 50 U.S.C. App. Section 459. The reemployment provisions of the Military Selective Service Act were recodified in 1974 into Title 38, United States Code, by the Vietnam Era Veterans' Readjustment Act of 1974 (88 Stat. 1578; 38 U.S.C. Section 2021, *et seq.*).

It has been stated that the power to "raise and support Armies" under Art. I, Section 8, Clause 12, is not only one of the most important powers of Congress, but it is also broad and sweeping. *Lichter v. United States,* 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); *Johnson v. Powell,* 414 F.2d 1060 (5 CA, 1969); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). It has been further stated that the power of Congress, to raise and support armies, to maintain a Navy, and to draft personnel for service therein, exists at peace time, as well as in war, and is plenary. *Bertelsen v. Cooney,* 213 F.2d 275 (1954), cert. den. 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 674.

Having concluded that the Act here in question was enacted under Congress' war making powers we must now determine whether said statute renders the States amenable to suit in the Federal courts and liable for monetary damages.

In *Parden,* supra, an employee of a state-operated railroad filed suit in Federal court to recover damages under the Federal Employers' Liability Act enacted under the Commerce Clause, for personal injuries sustained while employed by the State of Alabama. The Supreme Court emphasized Congress' plenary power under the Commerce Clause to abrogate a state's immunity from suit and noted that a state's sovereign power was diminished to the extent of the Enumerated Powers granted to the Federal Government in the Constitution.

In *Employees,* supra, state employees of Missouri sued for overtime compensation under the Fair Labor Standards Act. However, said Act did *not* include a provision indicating Congress' intent to subject the states to suit. For this reason the Supreme Court refused to apply the *Parden* case, because Congress had not *clearly* abrogated state immunity in the Fair Labor Standards Act. In that case, the State of Missouri was held to be immune from suit by virtue of the Eleventh Amendment.

There is one case which, although mentioned by plaintiff in a footnote, is not discussed by either party, but which we deem of utmost importance to be included in the analysis of this issue. In *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court refused to find authority for Congress to abrogate a state's immunity under the Commerce Clause. There the Court invalidated the 1974 Amendments to the Fair Labor Standards Act which tried to extend Federal minimum wages and maximum hours provision to state employees. Although the Court conceded that the regulations at issue were within the scope of the Commerce Clause it found that wage and hour determinations with respect to functions and services traditionally provided by the state governments were matters "essential to the separate and independent existence" of the states and hence beyond

---

1. See also: *Peel v. Florida Dept. of Transportation,* 443 F.Supp. 451 (D.C.Fla., 1977) not otherwise reported.

the reach of congressional power under the Commerce Clause. Thus, in *National League of Cities* the Supreme Court refused to accept that the "necessary and proper" clause of Article I under which both, the Commerce and War making powers are to be implemented, affords a blanket authorization for the abrogation of the states' sovereign immunity.

After *National League of Cities* the Supreme Court decided the case of *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), wherein it ruled that under Section 5 of the Fourteenth Amendment, Congress has the power to authorize Federal courts to enter a monetary award against the state as a means of enforcing the substantive guarantees of the Fourteenth Amendment. Plaintiff would like us to find that Section 5 of the Fourteenth Amendment relied in *Fitzpatrick* is the equivalent of the "necessary and proper clause" of Article I, Section 8 here at stake. We specifically refrain from so doing, in view of the nature of the specific enumerated power-war making-here discussed.[2]

It seems to us that the importance of the decision of the Supreme Court in *National League of Cities* lies in the standards by which the courts will evaluate Congress' use of the "necessary and proper clause" of Article I. If the Congressional enactment "will impermissibly interfere with the integral governmental functions of these (the states) bodies," *Id.,* 426 U.S. at 851, 96 S.Ct. at 2473, then it will be deemed invalid.

It serves well to remember that the analysis of the Supreme Court of the necessary and proper clause in *National League of Cities* was in connection with the Commerce Clause which had traditionally opened the doors to Federal intervention into the affairs of the State. It remains to be seen whether the same restrictive analysis will be made extensive to the rest of the enumerated powers which have not been deemed as menacing to the states' sovereignty. However, at the present time, *National League of Cities* is the latest declaration by our Highest Court in regard to the clause here at stake.

■ Notwithstanding all the above, even when considered in the light of the test in *National League of Cities,* we find that the power exercised in the present case is one residing exclusively within the province of Congress, inasmuch as the states did not retain the powers to make war or raise armies. *Giligan v. Morgan,* 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). Because of their paramount importance to our Country's national defense, the War Powers have been the source of Congress' authority to abrogate the States' Eleventh Amendment immunity from suit. We find that in enacting the Act here in question, Congress did not set out to interfere with the states' integral governmental functions but was putting into use its authority to raise armies and to protect those persons who left a civilian job in order to serve in the *militia. Fishgold,* supra.

■ We still have to face defendant's contention that there can be no monetary recovery from the State under the doctrine of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman,* the Supreme Court held that Federal courts were precluded from granting retroactive awards which require payment from state treasuries. However, *Edelman* did not foreclose exceptions to this general rule. In that case the Supreme Court found that the Social Security Act there at stake, did not contain an authorization for the award of retroactive benefits against a state. The Supreme Court stated in *Edelman* :

"But in this case the threshold fact of congressional authorization to sue a class of defendants which literally includes States is wholly different . . ." *Id.* at 672, 94 S.Ct. at 136.

However, in this case there is specific congressional authorization to sue the states, and thus the Commonwealth of Puerto Rico, for monetary damages. Thus, *Edelman* is inapposite. This reading of *Edelman* as to the award of monetary rem-

---

**2.** Moreover, it is one thing to hold that Section 5 of the Fourteenth Amendment is not the exclusive avenue to abrogate state immunity from suit and quite another to find that the necessary and proper clause of Article I is the equivalent of Section 5.

edies against the state was reiterated by the Supreme Court in *Fitzpatrick v. Bitzer,* supra, 427 U.S. at 452, 96 S.Ct. 2666. That is also the view adopted by the Court of Appeals for the First Circuit in *Kostka v. Hogg,* 560 F.2d 37 (1977), when it stated at page 44, footnote 6:

". . . The Eleventh Amendment, of course, reflects the judgment that, *in the absence of an explicit Congressional statement to the contrary,* federal courts should not have general authority to impose damages liability against the state itself . . ." (Emphasis added).

We find that in the present case, there has been an explicit Congressional enactment by virtue of the war making powers to authorize plaintiff herein to sue the Commonwealth of Puerto Rico, and the complaint is not barred by the Eleventh Amendment.

Wherefore, in view of all the above, defendant's motion to dismiss is hereby DENIED.

IT IS SO ORDERED.