**Daniel L. JENNINGS, Plaintiff-Appellee,**

**v.**

**ILLINOIS OFFICE OF EDUCATION,**
**Defendant-Appellant.**

**No. 78–1801.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1978.

Decided Jan. 4, 1979.

---

Gregory G. Lawton, Asst. Atty. Gen., Civil Appeals Div., Chicago, Ill., for defendant-appellant.

William H. Berger, U. S. Dept. of Labor, Atlanta, Ga., for plaintiff-appellee.

Before CUMMINGS, SPRECHER and WOOD, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff, an honorably discharged veteran, brought this action against the Illinois Office of Education, his former employer, because of its failure to offer him reemployment under the Veterans' Reemployment Rights Act (38 U.S.C. § 2021 *et seq.*). Plaintiff was a duplicating operator supervisor in defendant's employ from October 16, 1973, until June 20, 1974, when he resigned to perform military service. On June 29, he entered the U.S. Navy and served until August 11, 1975, when he was honorably discharged.

About a month after his discharge from the Navy, plaintiff applied for reinstatement to his former position but was refused reemployment by defendant on the ground that no position was open at the time. Through the assistance of the Department of Labor, on March 12, 1976, defendant offered to reinstate plaintiff to his former position. He refused that offer because he had secured a position with the Illinois Division of Vocational Rehabilitation in February 1976.

In March 1977, plaintiff brought this suit to recover wages lost as a result of defendant's refusal to hire him pursuant to the provisions of the Veterans' Reemployment Rights Act (the Act).[1] The following

---

1. The relevant portions of the Act appear in 38 U.S.C. as follows:

§ 2021. *Right to reemployment of inducted persons; benefits protected*

(a) In the case of any person who is inducted into the Armed Forces of the United States under the Military Selective Service Act (or under any prior or subsequent corresponding law) for training and service and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such training and service, and (1) receives a certificate described in section 9(a) of the Military Selective Service Act (relating to the satisfactory completion of military service), and (2) makes application for reemployment within ninety days after such person is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\* \* \* \* \* \*

"(B) if such position was in the employ of a State, or political subdivision thereof, or a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or the employer's successor in interest to such position or to a position of like seniority status, and pay; \* \* \*.

"§ 2022. *Enforcement procedures*

"If any employer, who is a private employer or a State or political subdivision thereof, fails or refuses to comply with the provisions of section 2021(a), (b)(1), or (b)(3), or section 2024, the district court of the United States for any district in which such private employer maintains a place of business, or in which such State or political subdivision thereof exercises authority or carries out its functions, shall have the power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provi-

month the defendant filed a motion to dismiss on the ground that the Act was unconstitutional under the Eleventh Amendment. After considering memoranda of counsel, Judge Ackerman denied the motion to dismiss, relying on *Peel v. Florida Department of Transportation*, 443 F.Supp. 451 (N.D. Fla.1977).[2] A few months thereafter, the district court granted partial summary judgment to plaintiff on the issue of liability. Simultaneously, the court filed a memorandum order incorporating findings of fact and conclusions of law. In the conclusions of law, the court stated that under the Act an employer cannot ordinarily refuse to reinstate a returning veteran on the ground that no current opening exists or that another employee might be bumped or displaced. Relying again on *Peel, supra,* and also on *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614, and *Lichter v. United States*, 334 U.S. 742, 781, 68 S.Ct. 1294, 92 L.Ed. 1694, the court held the Eleventh Amendment was no bar to recovery and that plaintiff was entitled to back wages for the six months during which defendant refused to reinstate him, until he refused its eventual offer of proper reinstatement. Plaintiff's actual earnings during that six-month period were to be deducted from his back wages due under the Act.

Two months thereafter, plaintiff filed a motion for summary judgment ordering defendant to pay him $3,072.08 plus interests and costs.[3] On May 15, 1978, final judgment was rendered for plaintiff in the sum of $3,072.08 plus interest. This appeal followed. We affirm.

Defendant's chief argument is that the Eleventh Amendment renders the Act unconstitutional insofar as it empowers federal courts to award money damages against state departments. For this proposition, defendant relies mainly upon *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, and *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389, but we conclude that they are inapplicable.

■ In 1974, Congress amended the Act to make reemployment rights mandatory for employees of state and local governments where, as here, a veteran leaves the military service after December 3, 1974. 38 U.S.C. § 2022 specifically authorizes the district courts to require an eligible veteran's employer to reinstate him and to compensate him "for any loss of wages or benefits suffered by reason of such employer's unlawful action" (note 1 *supra*). Since the same provision includes a "State or political subdivision thereof" as an employer, it is clear that Congress has authorized returning veterans to sue this kind of defendant for lost wages. Therefore, the judgment below was proper unless the statute is unconstitutional under the Eleventh Amendment.

### The War Powers Clauses

■ As seen, 38 U.S.C. § 2022 shows that Congress did intend to subject this kind of defendant to suit, and we hold that it had the power to do so under the war powers contained in Article I, Section 8, Clauses 11–13 of the Constitution. In *Case v. Bowles*, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552, the Supreme Court held that the constitutional grant of war powers is sufficient to sustain a statute that might otherwise violate the Tenth Amendment which reserves to the states powers not delegated to the United States by the Constitution.[4] The authority of *Case* was not affected by

---

sions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. * * "

**2.** The *Peel* case is pending on appeal to the Fifth Circuit where it was argued on June 20, 1978.

**3.** In its response to plaintiff's motion for summary judgment on the issue of damages, defendant conceded that if it were liable, plaintiff's back wages and benefits less mitigation would amount to $3,072.08, the exact sum claimed in plaintiff's motion for summary judgment.

**4.** To like effect, see *United States v. Oregon*, 366 U.S. 643, 648–649, 81 S.Ct. 1278, 6 L.Ed.2d 575; *United States Postal Service v. Brennan*, 574 F.2d 712, 716 (2d Cir. 1978).

*National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245, on which defendant relies. In *National League of Cities*, Justice Rehnquist took pains to note that *Case* was not being overruled and that the scope of Congress' authority under its war powers was not even being addressed. 426 U.S. at 854–85 n. 18, 96 S.Ct. 2465. If the war powers prevail over a state's Tenth Amendment defense, they must equally prevail over a state's Eleventh Amendment defense,[5] and the courts that have considered the matter have so held. *Peel v. Florida Department of Transportation, supra; Camacho v. Public Service Commission*, 450 F.Supp. 231 (D.P.R.1978); *Sheely v. Idaho Falls School District No. 91*, Civil No. 78–4012 (D.Idaho, decided Nov. 8, 1978); see also *Confederated Tribes of Colville v. State of Washington*, 446 F.Supp. 1339, 1350 (E.D.Wash.1978; statutory three-judge court); *Schaller v. Board of Education*, 449 F.Supp. 30, 32–33 (N.D.Ohio 1978).

The reasoning of the *Peel, Camacho* and *Sheely* courts is entirely consistent, as discussed in detail below, with other Eleventh Amendment cases (including *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, and *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389, on which the defendant relies) where private actions against states were held barred because there was no legislative history or statutory language showing that Congress intended to make it possible for a private citizen to sue a state in the federal courts. Here the statute itself does show that Congress intended to permit a veteran to recover lost wages from an employing state agency. Illinois has not shown that this result would unduly burden its treasury. Moreover, the Senate Report accompanying the 1974

amendment to the statute shows that Congress wanted veterans who had been employed by state governments to have their legal rights litigated in the federal courts, so that their reemployment rights might be determined in such a forum. S.Rep. No. 93–907, 93d Cong., 2d Sess., p. 111.

Here Congress was "exercising legislative authority that is plenary within the terms of the Constitutional [war powers] grant." Therefore, in this case the war powers serve as the vehicle for overriding the bar of the Eleventh Amendment. See *Fitzpatrick v. Bitzer, supra* at 456, 96 S.Ct. at 2671.

If the defendant's claim of sovereign immunity were to be honored as to this statute, a State would be impairing part of "the mechanism for manning the Armed Forces of the United States." *Alabama Power Co. v. Davis*, 431 U.S. 581, 583, 97 S.Ct. 2002, 52 L.Ed.2d 595. To accept defendant's position would render the Constitution self-destructive. Yet, as stated in *Lichter v. United States*, 334 U.S. 742, 781, 68 S.Ct. 1294, 92 L.Ed. 1694, involving the war contracts Renegotiation Act, the power given to Congress to prosecute war "is not destroyed or impaired by any provision of the Constitution or by any one of the amendments." (quoting with approval from an address by Chief Justice Hughes).

### The Eleventh Amendment and Sovereign Immunity

Our conclusion that this suit may be maintained is not inconsistent with other cases considering a state's immunity to suit. The proper interpretation of the Eleventh Amendment [6] and the common law doctrine of sovereign immunity has been a fertile source of controversy for both courts and

---

5. Although the peculiar nature of the Tenth Amendment does not make this conclusion automatic, it follows from the fact that both the Tenth and Eleventh Amendments are expressions of the doctrine of federalism and from the crucial role of the federal war powers.

6. The Eleventh Amendment of the Constitution provides:

"The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

commentators.[7] The resulting decisions and articles have established the now universally accepted view that the Amendment was adopted to "repeal" the 1793 decision of the Supreme Court in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440. It is much less clear what the full effect of the Amendment is, beyond the historically obvious one of barring federal contract actions by out-of-state citizens against non-consenting states. It is well established that federal suits against unconsenting states by their own citizens are also barred, at least where such suits have not been authorized by Congress. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842. Whether this result is required by the Eleventh Amendment despite the fact that its language is directed only at out-of-state citizens, or whether a state's nonamenability to suits by its own citizens is merely an expression of common law sovereign immunity, is less clear.[8] We need not resolve that debate here since the prevailing interpretation is that the potential bar to citizen suits is the doctrine of sovereign immunity. Whether that doctrine has been constitutionalized or not, the outcome of this case must turn on whether the doctrine of sovereign immunity, in the context of our federated states, is interpreted to authorize congressional abrogation of states' immunity to suits.[9] The present case presents the question of the power of Congress to authorize damage actions against states in a new guise, since here Congress acting under the war powers clauses [10] has explicitly authorized such suits. In these circumstances, the congressional authorization is proper and enforceable.

A brief review of the recent Supreme Court cases will illumine our reasons for so holding. In *Parden v. Terminal Railway Co.*, 377 U.S. 184, 187, 84 S.Ct. 1207, 12 L.Ed.2d 233, Justice Brennan observed that the Eleventh Amendment was directed at federal suits on state debt obligations without the states' consent. See also *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 406, 5 L.Ed. 257. The *Parden* Court held that

7. The major cases and leading law review articles will be discussed in the course of this opinion. For a recent and comprehensive list of the voluminous writing on this subject, see Field, *The Eleventh Amendment and Other Sovereign Immunity Doctrines: Part I*, 126 U.Pa.L.Rev. 515 (1978) and Field, *The Eleventh Amendment and Other Sovereign Immunity Doctrines: Congressional Imposition of Suits upon the States*, 126 U.Pa.L.Rev. 1203 (1978) (hereinafter Field I and Field II).

8. Justice Brennan believes that *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, held that sovereign immunity, rather than the Eleventh Amendment, bars citizen suits. *Edelman v. Jordan*, 415 U.S. 651, 687, 94 S.Ct. 1347, 39 L.Ed.2d 662 (Brennan, J., dissenting). Justice Rehnquist, on the other hand, appears to think that the Eleventh Amendment embodies the doctrine of sovereign immunity with respect to *suits by citizens against their own states*. *Edelman, supra* at 663, 94 S.Ct. 1347; *Fitzpatrick v. Bitzer*, 427 U.S. 445, 450, 96 S.Ct. 2666, 49 L.Ed.2d 614. Commentators have argued that the Eleventh Amendment merely reenacted the common law doctrine of sovereign immunity even with regard to suits by non-citizens. Field I, *supra* n. 7, at 544–545; Nowak, *The Scope of Congressional Power to Create Causes of Action Against State Governments and the History of the Eleventh and Fourteenth Amendments*, 75 Colum.L.Rev. 1413 (1975) (hereinafter Nowak); Tribe, *Intergovernmental Immunities in Litigation, Taxation, and Regulation: Separation of Powers Issues in Controversies About Federalism*, 89 Harv.L.Rev. 682 (1976) (hereinafter Tribe).

These commentators conclude that the proper interpretation of the Eleventh Amendment and Article III is that the states' immunity is not automatically abrogated, but that Congress has the authority to abrogate it, even as to suits by non-citizens. See also Nagata, *Federal Powers and the Eleventh Amendment: Attorneys' Fees in Private Suits Against the State*, 63 Calif.L.Rev. 1167 (1975).

9. Justice Marshall's view of the Eleventh Amendment is that it does not bar congressional abrogation of states' immunity to suit, but that it does prevent federal courts from taking jurisdiction, even when authorized by Congress. 411 U.S. at 287–298, 93 S.Ct. 1614, 36 L.Ed.2d 251 (Marshall, J., concurring). Apparently this interpretation would bar the present suit, but since it seems to be unique to Justice Marshall, we are not bound by it. Moreover, in the present case, Congress did not purport to authorize suits in state courts, so that if Justice Marshall's approach were strictly applied, Congress would have created a right without a remedy.

10. See previous discussion of the crucial role of the war powers clauses in the federal scheme.

congressional authorization of suits against employers under the Federal Employers' Liability Act (FELA) included damage actions against the State of Alabama, which was operating an interstate railroad in its proprietary capacity. The Court adopted a bifurcated approach, asking first whether Congress had intended to authorize such suits, and second whether it had the power to do so. Although the FELA did not authorize such suits *in haec verba*, the Court concluded after a review of the statute and its history that such suits had been intended. Turning to the question of congressional power, the Court said:

"Congress enacted the FELA in the exercise of its constitutional power to regulate interstate commerce. While a State's immunity from suit by a citizen without its consent has been said to be rooted in 'the inherent nature of sovereignty,' the States surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce.

.   .   .   .   .

"By empowering Congress to regulate commerce, then, the States necessarily surrendered any portion of their sovereignty that would stand in the way of such regulation." *Id.*, 377 U.S. at 190, 192, 84 S.Ct. at 1211 (citations omitted).

This seemingly unequivocal language was promptly modified, however, by the Court's assertion that notwithstanding the fact that Congress was acting under the commerce power, a state still must waive its immunity to be amenable to suit.[11] The Court found such a waiver in the fact that Alabama voluntarily continued to operate the railroads after the FELA had been enacted. Justice White, writing for four dissenters, objected on the ground that the congressional intention to subject states to such suits should be clearly expressed, but

strongly implied that Congress would have the power to authorize such suits. *Id.* at 198–199, 84 S.Ct. 1207.

In *Employees v. Missouri Public Health Dept.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251, the next case raising the Eleventh Amendment issue, the Court held that Congress had not authorized suits by state employees under the Fair Labor Standards Act (FLSA). It interpreted *Parden, supra,* as depending on a waiver of immunity by the state, and concluded:

"The question is whether Congress has brought the States to heel, in the sense of lifting their immunity from suit in a federal court.

.   .   .   .   .

"Where employees in state institutions not conducted for profit have such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised, Congress can act. And when Congress does act, it may place new or even enormous fiscal burdens on the States." *Id.* at 283–284, 93 S.Ct. at 1617.

Mr. Justice Douglas, writing for the majority, thus strongly implied that Congress acting under its Article I powers could condition the operations of the state on the forfeiture of immunity from suit in federal courts, resulting in what has been labeled a "forced waiver" of immunity. However, he concluded that Congress had not exercised such power in the FLSA.

The following Term, the Court held that a suit against a state official which would result in retroactive monetary relief paid from the state treasury was barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662. The suit was brought to enforce certain provisions of the Social Security Act and regulations pursuant to it which implement-

---

11. This has caused some confusion as to whether a state must waive its immunity by consenting to suit even when the congressional authorization for such suits is clear. Mr. Justice Brennan has interpreted his majority opinion in *Parden* as requiring the state to consent to suit only when the congressional intention to

enact substantive regulation, but not the intention to subject the states to federal court suits, is clearly expressed. *Employees v. Missouri Public Health Dept.,* 411 U.S. 279, 299–301, 93 S.Ct. 1614, 36 L.Ed.2d 251 (Brennan, J., dissenting).

ed the Aid to the Aged, Blind and Disabled program. Neither the statute nor the regulations expressly authorized suits against states. The Supreme Court concluded that such suits were not authorized by *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, distinguishing between prospective injunctive relief (authorized in *Young*) and retrospective monetary relief. Mr. Justice Rehnquist, writing for the majority, also held that Illinois had not waived its immunity from suit by participating in the federally funded program. The Court first noted that "the threshold fact of congressional authorization to sue a class of defendants which literally includes States is wholly absent." *Id.*, 415 U.S. at 672, 94 S.Ct. at 1360. It then concluded that a waiver of state immunity should be found "only where stated 'by the most express language or by * * overwhelming implications from the text * * *.' " *Id.* at 673, 94 S.Ct. at 1360. The Court, noting that the only sanction in the Social Security Act was a provision for withholding federal funds from non-complying states, concluded that:

> "[t]his provision by its terms did not authorize suit against anyone, and * * * fell far short of a waiver by a participating State of its Eleventh Amendment immunity." *Id.* at 674, 94 S.Ct. at 1361.

The clear implication of this language is that a more express congressional authorization to sue a state in federal court would constitute such a waiver.

When the Court was presented with just such an express authorization in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614, it unequivocally held that such suits were not barred by the Eleventh Amendment or sovereign immunity. Since the statute involved in *Fitzpatrick* was enacted pursuant to Congress' enforcement powers under Section 5 of the Fourteenth Amendment, it does not directly control a case such as the present one where Congress was acting pursuant to an Article I power. However, the mode of analysis of the *Fitzpatrick* decision is instructive.

The Supreme Court focused on the grant of power from the states to the federal government under the Fourteenth Amendment, asking whether that grant included the power to abrogate the states' immunity to suit. In undertaking a similar analysis with respect to the powers delegated in Article I, and in particular the war powers, we are aided by three recent law review articles, all of which have argued convincingly that nothing in the language, history or policy of the Eleventh Amendment or the doctrine of sovereign immunity forecloses Congress, acting under a delegated power, from making a state amenable to suit in the federal courts.[12] These and other commentators have concluded that to the extent Congress acts under the sovereign powers delegated to it by the states "in the plan of the convention,"[13] it has the power

12. Professor Nowak (Nowak, *supra* n. 8) presents a detailed historical interpretation of the extent to which the doctrine of sovereign immunity was modified in Article III. After analyzing *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440, and the history of the Eleventh Amendment, he concludes that both Article III and the Eleventh Amendment prohibit judicial, but not congressional, abrogation of a state's immunity.

Professors Tribe and Field, after independent analyses, concur in this interpretation (Tribe, *supra* n. 8; Field I, *supra* n. 7). All three articles stress that allowing Congress to abrogate states' immunity to federal suits is faithful to the policies of federalism which permeate the Eleventh Amendment. As Professor Nowak puts it:

"A congressional grant of jurisdiction allowing a suit by a citizen against a state indicates that Congress has determined that the

federal policy is preeminent and that the hardship on the state is not severe. The states may adjust to the congressional enactment or, if the regulation proves onerous, they may exert their influence on Congress to have it changed. * * * [I]t is Congress that is responsive to the influence of the states. * * * The clear implication in the eleventh amendment context is that Congress did, in fact, determine that the federal policy should be preeminent and that the hardship on the state would not be severe." (Footnote omitted.) Nowak, *supra* n. 7, at 1442.

13. Hamilton's interpretation of the doctrine of sovereign immunity as applied to the states, quoted at length in *Monaco v. Mississippi,* 292 U.S. 313, 324, 54 S.Ct. 745, 748, 78 L.Ed. 1282, is as follows:

"It is inherent in the nature of sovereignty not to be amenable to the suit of an individu-

to abrogate the states' immunity. This approach is especially convincing where as here, the suit is by a citizen against his own state [14] and Congress has clearly authorized it pursuant to its war powers.

Our holding today was foreshadowed by *Employees, supra, Edelman, supra,* and *Fitzpatrick, supra.* The express congressional authorization of damage suits against states in the Act involved here constitutes the "forced waiver" or exercise of delegated power to "bring the states to heel" that the Supreme Court searched for but failed to find in *Employees* and *Edelman.* We read those cases, together with *Parden,* as establishing that to make states amenable to federal damage actions there must be congressional action under a delegated power and either consent to suit by a state (express or implied) or a clearly expressed congressional intention to abrogate the states' immunity. Since in this case we have the latter condition, we need not search for consent to suit by the State of Illinois. Although this result may be reached through the doctrine of "forced waiver," to the extent that phrase fails to distinguish between the original waiver (the delegation of powers in the Constitution) and a present waiver by a state through its consent to be sued, it seems needlessly confusing. It would seem preferable to describe the congressional action here as an exercise of power delegated to it "in the plan of the

convention," which includes the power to make the states amenable to damage actions in the federal courts.

There is support for this approach in *Fitzpatrick v. Bitzer, supra.* The powers delegated under the Fourteenth Amendment clearly are not co-extensive with those delegated under Article I, so that, as previously noted, *Fitzpatrick* does not control this case. However, just as Justice Rehnquist analyzed the delegation of powers to Congress under the Fourteenth Amendment to determine whether the states had relinquished their sovereignty to the extent of delegating to Congress the power to abrogate their immunity, our task is to determine the same question under the delegation of powers in Article I. To the extent *Fitzpatrick* turns on an interpretation of Section 5 of the Fourteenth Amendment as a *pro tanto* repeal of the Eleventh Amendment and the incorporated doctrine of sovereign immunity, *Fitzpatrick* would of course not be precedent for the approach we take today. Even if that is what *Fitzpatrick* stands for, however, it does not undercut our analysis, since the Court in *Fitzpatrick* surely wanted to make its constitutional holding as narrow as possible.[15] However, as indicated, we think that the proper reading of *Fitzpatrick* reveals that it turns on delegation of powers, rather than repeal.[16]

---

al *without its consent.* This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union. *Unless, therefore, there is a surrender of this immunity in the plan of the convention,* it will remain with the States * * * ." (Second emphasis supplied.)

**14.** See discussion accompanying note 8, *supra.*

**15.** Because the law in *Fitzpatrick* would, under this reading, be constitutional because of the repeal theory, there would have been no necessity to reach the delegation of powers issue.

**16.** Some of the Court's language could be interpreted to suggest that Congress can exercise power to authorize federal damage actions against states under the Fourteenth Amendment when it could not do so under Article I. That is one interpretation of the following passage:

"We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts. See *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)." (Footnote omitted.) 427 U.S. at 456, 96 S.Ct. at 2671.

However, since the cases cited are ones in which there was no congressional authorization, the preferable interpretation of this passage appears to be that Congress can authorize suits under the Fourteenth Amendment (and, we would now add, under Article I) that would have been unconstitutional if not authorized by Congress.

Under our reading of *Fitzpartick,* only if the Eleventh Amendment is interpreted both to constitutionalize the doctrine of sovereign immunity and to alter what historians and the Supreme Court have accepted as the original conception of the framers (see notes 12 and 13, *supra*), would it matter that the authorization to sue was enacted under the Fourteenth Amendment rather than Article I.[17] Nothing in *Fitzpatrick* suggests that the Court believes that the Eleventh Amendment so altered the federal scheme, and such an interpretation would not be in accord with the conclusions of the scholars who have studied the history of the Eleventh Amendment (see note 12, *supra*).

Applying the delegation of powers analysis to the present case, we are, as previously indicated, convinced by the analyses of scholars who have thoroughly researched the question and concluded that such power was delegated.[18] Moreover, the previously discussed decisions of the Supreme Court in *Parden, Employees,* and *Edelman* establish that such an exercise of power by Congress is constitutional.

Our holding does not conflict with considerations of federalism. The statute here involved could be construed as authorizing "retrospective" damage actions against states, which were historically the type of actions at which the Eleventh Amendment was directed, but nothing in the prior cases or policy considerations compels that its enforcement be denied. First, the damages authorized here are not "retroactive" in the sense that they create new liabilities for behavior that had not previously clearly been determined to be illegal.[19] Moreover, in *Edelman,* where the Supreme Court

stressed its reluctance to hold states amenable to such suits, it was being asked to expand judicially created exceptions to the doctrine of state immunity rather than, as here, to enforce a clearly articulated congressional policy.

██ Neither of the reasons commonly advanced for the reluctance to hold states liable for damages—the burden on their treasuries and the intrusion into their processes—applies here. The fiscal burden resulting from purely prospective relief can be at least as great as that caused by damage actions. The Supreme Court has acknowledged this,[20] and has held that even an enormous fiscal burden imposed by congressional action abrogating a state's immunity would be constitutional.[21] Moreover, any intrusion into the state's internal processes here is the work of Congress. Where the requirements of federal law have been clearly articulated by Congress acting under a delegated power and in a manner that does not contravene the Tenth Amendment,[22] the states have no choice as to how to order their affairs to comply with the dictates of federal law. The only question then confronting the federal courts is whether they have the power to enforce the congressional mandate. *Fitzpatrick v. Bitzer, supra,* and the Supreme Court's most recent decision in this area, *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522, answer this question in the affirmative.

In *Hutto,* the plaintiff was awarded counsel fees, to be paid from state funds, on the ground that this was necessary to the enforcement of prospective relief. The Supreme Court held that once a federal in-

---

**17.** If the Eleventh Amendment were so interpreted, it could be argued that the Eleventh Amendment altered the delegation of powers in Article I, but had no effect on the delegation in the Fourteenth Amendment.

**18.** Nowak, *supra* n. 8, and authorities cited therein; Field I, *supra* n. 7.

**19.** Nowak, *supra* n. 8, suggests that only an attempt by Congress to create "a cause of action making states liable for actions taken prior to the effective date of the legislation"

would be unconstitutional because of the Eleventh Amendment. 75 Colum.L.Rev. at 1444.

**20.** 415 U.S. at 667, 94 S.Ct. 1347.

**21.** 411 U.S. at 284, 93 S.Ct. 1614.

**22.** While the Tenth Amendment might in some instances present a bar to the accomplishment of congressional policy and *ipso facto* to private suits enforcing that policy, the State of Illinois has specifically disclaimed reliance on the Tenth Amendment. Reply br. at 20, n. 5.

junction issued, it could be enforced by the assessment of a monetary award against the state. Applying *Hutto* to the facts in our case, it seems clear that if the plaintiff had continued to seek reinstatement, he would be entitled to a federal court injunction ordering it and that if the state refused to comply, he would be entitled to his wrongfully withheld wages as the means of enforcing the prospective relief. Yet where the federally imposed obligations have been clearly articulated by Congress, it would seem anomalous indeed to require a federal court injunction ordering a state to comply with the congressional mandate before it could be effectively enforced.

Justice Stevens, writing for the Court in *Hutto*, pointed out that Congress had the power to pass legislation abrogating the states' immunity by imposing taxable costs on the states even "without expressly stating that it intends to abrogate the States' Eleventh Amendment immunity." *Id.* at 696, 98 S.Ct. at 2577. By the same token when Congress, acting under its war powers, expressly abrogates that immunity, it has the authority to do so.

*Insufficiency of State Remedy*

■ Finally, defendant argues that the district court should not have assumed jurisdiction because the Illinois Service Men's Employment Tenure Act (Ill.Rev.Stat. ch. 126½, § 29 *et seq.* (1977)) provided a remedy. We cannot accept this argument because the Veterans' Reemployment Rights Act preempts state law in view of "Congress' explicit design for uniform enforcement among the States * * *." *Peel v. Florida Department of Transportation, supra,* 443 F.Supp. at 460.

Judgment affirmed.